GARRETT, J.
It Humana, Inc., appeals from a trial court judgment denying its request to annul a default judgment rendered against it. The plaintiff, Michael Swinea, answers the appeal, seeking attorney fees for responding to Humana’s appeal. We affirm the trial court judgment and award the plaintiff additional attorney fees of $1,000.
FACTS
The plaintiff was employed at Graphic Packaging in West Monroe when he became disabled around April 1, 2012. He was covered by a disability insurance policy obtained through his employment from Kanawha Insurance Company (“Kana-wha”).[1] He was paid disability benefits of $2,700 per month until November 15, 2013, when they were terminated.
The plaintiff received a letter from Hu-mana dated November 25, 2013, informing him of the termination decision and his appeal rights. The name “Humana” appears in large, bold letters in the top left-hand corner of this document, with the phone number, name and mailing address of Kanawha underneath it in much smaller, non-bold print. In pertinent part, the letter recited:
Your claim has been denied
Dear Michael Swinea:
We recently received your claim regarding your disability benefits. However after a thorough review, the claim is denied as the submitted services are not covered benefits on your policy.
Per your policy:
Total Disability—means, for the first 24 months of a disability that the Member is:
|¾* Unable to perform the substantial and material duties of His Regular Occupation;
• Not working in any other occupation; and
*899 • Under the care of a Physician for the disability.
After (24) months of Total Disability, Totally Disabled means that the Member is[:]
• Unable to perform the duties of Any Occupation; and
• Under the care of a Physician for the disability.
We will not require care of a Physician when it is no longer needed for the sound medical care of the condition causing Total Disability.
Information submitted did not warrant further disability beyond 11/15/13.
If you disagree with our claim determination, you do have the right to appeal the decision. Enclosed you will find your appeal rights and how to file an appeal with Humana.
We value you as a policyholder and appreciate the opportunity to be of service to you.
The accompanying document entitled “Your Appeal Rights” specified that appeals be sent to an address in Lancaster, South Carolina, for “Grievance and Appeals.” The last line in this document stated, “Insured by Kanawha Insurance Company, a Humana company.” Both this document and the letter contained a notation in the bottom left-hand corner which read:
Humana.com
InSystem
The plaintiff appealed the denial. In a letter dated January 3, 2014, the plaintiff was advised that the matter was being researched. The letter specifically stated:
Thank you for your inquiry we received on January 2, 2014. We are currently doing research and will send a decision letter within the required timeframe. Please be assured we’re committed to providing a full and fair review.
IsYou are covered by Kanawha Insurance Company, a subsidiary of KMG America, under a disability plan from April 1, 2012 to present, Humana, Inc. acquired KMG America on November 30,2007.
The letter instructed the plaintiff to send any other documents he wanted included in the review to “Humana Inc., Grievance and Appeal Department” at the same Lancaster, South Carolina post office box address provided in the previously sent appeal rights document. The letter was signed by a person who identified herself as a specialist for “Humana Grievance and Appeal Department.”
The plaintiff received another letter, which was dated January 27, 2014, and purported to be from a different specialist for “Humana Grievance and Appeal Department.” The letterhead on this document consisted solely of the word “Huma-na” in large, bold letters in the top left corner of the first page of the two-page letter. The letter stated:
We disapproved your request for disability benefits because from November 16, 2013, forward because [sic] the claim was processed correctly according to the terms of the plan.
You are covered by Kanawha Insurance Company, a subsidiary of KMG America, under a disability plan from April 1, 2012, through the present. Humana Inc. acquired KMG America on November 30, 2007.
This decision was based on review of your appeal request, the claim submission, medical records, and the disability plan. The information was reviewed by an independent external reviewer, a board certified orthopedic surgeon.
Disability benefits are limited as specified in the plan. The plan defines Totally Disabled as the inability of the employee *900 to perform their job duties, not working in any other occupation, and be under [sic] the care of a physician. The report from the external reviewer stated that the clinical notes do not support there is an indication for total disability from November 16, 2013, forward. The documentation supports you have some limitations, but these are not supported with any physical therapy (PT) notes or significant exam findings. Therefore, no additional benefits are payable.
| ¿The plan states on page 15:
Totally Disabled (Total Disability) means, for the first 24 months of a disability that You are:
• Unable to perform the substantial and material duties of Your Regular Occupation;
• Not working in any other occupation; and
• Under the care of a Physician for Your disability.
After 24 months of Total Disability, Totally Disabled means that You are:
• Unable to perform the duties of Any Occupation or employment for which You are qualified by reason of education, training, or experience and which provides You with substantially the same earning capacity as Your former earning capacity prior to the start of Your Disability; and
• Under the care of a Physician for Your disability.
We will not require care of a Physician when it is no longer needed for the sound medical care of the condition causing Total Disability!.]
The letter then informed the plaintiff that he could obtain a copy of “any guideline, criteria or clinical rationale” relied upon by the company by sending a written request to “Humana Inc., Grievance and Appeal Department” at the same Lancaster, South Carolina post office box address previously given in the company’s correspondence with him,[2] In the final paragraph of the letter, the plaintiff was urged to “[b]e sure to visit humana.com, where you can check claim status, verify eligibility, and find answers to commonly asked questions, 24 hours a day, seven days a week.” (Emphasis theirs.)
Thereafter, the plaintiff retained counsel, who sent Humana/Kanawha a demand letter dated May 15, 2014, by certified mail. No response was made to the demand letter and the disability benefits were not reinstated.
|fiOn October 8, 2014, the plaintiff filed suit against Humana, asserting that it was “a foreign insurance company authorized to do and doing business in the State of Louisiana” which could be served through the Louisiana Secretary of State. He further alleged that he was receiving disability payments of $2,700 per month at the time his benefits were cut off. Consequently, he sought benefits totaling«$14,850, from November 16, 2013, through April 28, 2014, at which time his total disability ended when he returned to work. He also requested attorney fees and double damages under La. R.S. 22:1821, as well as interest and court costs. Service on Huma-na was made through the Louisiana Secretary of State.
On February 4, 2015, a preliminary default was entered against Humana. The default was confirmed on July 22, 2015. At the beginning of the confirmation hearing, the trial court questioned whether service on the Louisiana Secretary of State was *901 appropriate. Plaintiffs counsel informed the court that, to his knowledge, Humana did not have a registered agent for service of process.
Testimony was given by the plaintiff as to his total knee replacement surgery and the ensuing disability, which commenced on or about April 1, 2012, and ended on April 28, 2014, when he returned to work. He stated that, under a disability insurance policy obtained through his employment, he received disability payments of $2,700 per month until they were terminated on November 15, 2013. He received the letter from Humana dated November 25, 2013, informing him of the termination decision and his appeal rights. The plaintiff testified that he was unable to perform the duties of any occupation until April 28, 2014, that he did not work in any other occupation, and that he was under the care of a physician for his disability. |fiHe further stated that his physicians documented that he was qualified for total disability under the policy. He testified that he was owed $14,850 in unpaid disability benefits.
The plaintiff introduced into evidence all of the letters exchanged between himself and Humana described above, as well as letters and affidavits from his physicians. In their affidavits, Dr. Randolph Hill Taylor and Dr. Clyde E. Elliot stated that they treated the plaintiff for his knee problems, including his total knee replacement in March 2013, and attested to his inability to perform his work duties. In an October 2013 letter, Dr. Elliot opined that the plaintiff was permanently impaired/disabled with little reasonable expectation of improvement. In a March 2014 letter, Dr. Taylor—who performed the plaintiffs total knee revision—released the plaintiff to return to work on April 28, 2014, with no restrictions or limitations. The plaintiff testified that he returned to work for six months, but the doctors subsequently “took me back off.” At the time of the hearing, he was not working. The plaintiff asserted that he had complied with every request made by the insurer and that no independent medical exam was ever requested or conducted. On the issue of attorney fees, the plaintiff testified that he agreed to pay his lawyer one-third of his recovery.
At the conclusion of the hearing, the trial court rendered judgment in favor of the plaintiff. It specifically found that service of process was proper and that an award of double damages under La. R.S. 22:1821 was appropriate. The judgment signed that day awarded the plaintiff $29,700,17plus attorney fees of $9,900,[3] legal interest from the date of judicial demand, and court costs.
On August 20, 2015, Humana filed a motion for new trial on the basis that it is not an insurance company. In support of the motion, it submitted the affidavit of its senior litigation manager, Lori Mattingly. She stated that Humana was a Delaware corporation with a principal place of business in Louisville, Kentucky; that it was not registered to do business in Louisiana; that it never designated the Louisiana Secretary of State as its agent for service of process; that it is not an insurance company, and does not serve as a third-party administrator or claims adjudicator; and that it was not responsible for the payment of claims or the determination of coverage under any insurance policy. She further attested that Humana did not issue any insurance policy to or otherwise contract with the plaintiff. She stated that she had reviewed Humana’s records as to the plaintiff; that he was covered under a policy for group disability income insurance issued by Kanawha, which was an *902 authorized insurance company in Louisiana currently doing business there; and that Kanawha was a wholly-owned subsidiary of KMG America Corporation, which Hu-mana acquired in 2007. Attached to the affidavit was a document entitled “GROUP DISABILITY INCOME INSURANCE CERTIFICATE NON-PARTICIPATING” and “CERTIFICATE OF GROUP DISABILITY INCOME INSURANCE FOR: S OF [sic],”- which purported to be the Kanawha group policy under which the plaintiff was insured. However, it provides no information as to the identity of the named insured.
|sOn September 30, 2015, the motion for new trial was argued. Humana sought to have the prior judgment vacated by challenging service. It argued that, as a foreign corporation, it should have been served by long-arm service since it did not have a designated agent for service in this state. Humana asserted that suit should have been brought against Kanawha instead, The trial court ordered that the record remain open for 30 days to allow Humana to submit corporate paperwork and to obtain information from the appropriate Louisiana state agency as to whether Humana had a certificate to do business as an insurer in this state.
On October 29, 2015, Humana fax filed to the clerk of court a supplemental memorandum and two exhibits, one of which was an affidavit from Ralph M. Wilson, its vice-president and associate general counsel. He stated that he had reviewed its corporate records and found no records indicating that Humana possessed a certificate for doing business as an insurance company in Louisiana or that it was otherwise registered to do business there. He further found no records indicating that Humana had designated the Louisiana Secretary of State as its agent for service of process. Attached to his affidavit as an exhibit was a copy of Humana’s 1989 restated certificate of incorporation from Delaware. The second exhibit attached to the supplemental memorandum was an affidavit from an assistant commissioner of licensing for the Louisiana Department of Insurance, which stated that he had confirmed that Humana had never been authorized or approved to act as an insurer in Louisiana. He further stated that the records indicated that Hu-mana is the ultimate controlling party of numerous insurers who are licensed in this state, including Kanawha.
|9On January 5, 2016, the trial court issued a written ruling. It noted that the motion for new trial appeared untimely under La. C.C.P. Art. 1974. However, in the interest of judicial economy, the court treated the motion as a request to annul the default judgment due to lack of proper service of process, which could be brought at any time under La. C.C.P. Art. 2002. The court rejected Humana’s contention that it was not a foreign insurance company doing business in Louisiana. While it was undisputed that the policy was issued by Kanawha, the court found Humana’s correspondence with the plaintiff “problematic.” The court pointed to the language in the January 3, 2014, letter from a specialist for “Humana Grievance and Appeal Department,” which assured the plaintiff of a “full and fair review”; informed him that he was covered by the Kanawha policy; and explained Kanawha’s status as a KMG America subsidiary and the acquisition of KMG America by Humana. The letter also directed the plaintiff to send additional documents to “Humana, Inc., Grievance and Appeal Department.” The court found that the plaintiff correctly served Humana through the Louisiana Secretary of State pursuant to La. R.S. *903 22:335.[4] All costs were assessed to Huma-na.
In a footnote, the court found that the plaintiff produced competent evidence to support the confirmation of the default. It then stated that, despite its order to hold the record open for 30 days, Humana failed to file | many additional public record paperwork addressing its corporate purpose. On January 29, 2016, the trial judge sent a letter informing counsel that Huma-na’s fax filing from October 29, 2015, was not in the suit record at the time it ruled. Consequently, the court decided to revisit its decision in light of this filing.
On March 18, 2016, the trial court issued a supplemental written ruling in which it again denied Humana’s motion. It ruled that Humana was de facto doing business as an insurer in Louisiana through its wholly-owned subsidiaries. In support of this decision, it pointed to the affidavit from the Department of Insurance stating that Humana was the ultimate controlling party of such insurers licensed in Louisiana as Kanawha. The court also pointed to the correspondence to the plaintiff from Humana, in particular the portions indicating that Humana had authority to deny payment of benefits under the policy. The court further found that the correspondence from Humana to the plaintiff “makes it plain that entity is acting as the administrator of his disability claim under the policy issued by its wholly owned subsidiary Kanawha Insurance Company.” It further classified Humana, under La. R.S. 22:1902, as an unauthorized insurer transacting the business of insurance in this state. In particular, it found that Humana’s actions with respect to the plaintiffs claim constituted “transaction of any matter subsequent to the execution of such a contract and arising out of it” under La, R.S. 22:1902(5). The court concluded that service of process on Humana through the Louisiana Secretary of State was authorized and valid lnunder La. R.S. 22:1907(A).[5] It again found the evidence presented at the confirmation of default hearing was sufficient.
Judgment denying Humana’s request to vacate the default judgment was signed on April 18,2016. Costs were assessed against Humana.
Humana filed a suspensive appeal.
*904 UNAUTHORIZED INSURER PURSUANT TO LA. R.S. 22:1902
Humana argues that the trial court erred when it concluded that, under La. R.S. 22:1902, Humana was an unauthorized insurer transacting the business of insurance in this state. In particular, the trial court found that Humana’s actions with respect to the plaintiffs claim constituted “transaction of any matter subsequent to the execution of such a contract and arising out of it” under La. R.S. 22:1902(5).
In relevant part, La. R.S. 22:1902 states:
A. Any of the following acts in this state, effected by mail or otherwise, by an unauthorized insurer or by any person acting with actual or apparent authority of the insurer, on behalf of the insurer, is deemed to constitute the transaction of an insurance business in or from this state:
[[Image here]]
(5) The transaction of any matter subsequent to the execution of such a contract and arising out of it.
Humana contends that the insurance policy in this case was issued by Kanawha, a licensed insurer and a wholly-owned subsidiary of Humana. It concedes that it does not possess a license to transact a business of insurance in Louisiana, but maintains that it is only a parent holding company of | ^several insurers, including Kanawha, which are licensed here. Humana also claims that the use of its logo in connection with products and services provided by these insurer-subsidiaries does not constitute the transaction of an insurance business by Humana. It further asserts that there is no evidence that any entity other than Kanawha was responsible for evaluating and denying the plaintiffs claim. We disagree with these arguments and agree with the cogent reasoning of the trial court.
The evidence presented at the default confirmation unequivocally demonstrated that Humana was acting as an insurer in Louisiana by administering the plaintiffs claim. Throughout Humana’s correspondence with the plaintiff, Humana portrayed itself as the party deciding the merits of the plaintiffs claim. The two letters received by the plaintiff in January 2014 were signed by persons who explicitly identified themselves as specialists for “Humana Grievance and Appeal Department.” Both of these letters specifically directed the plaintiff to communicate with “Humana Inc., Grievance and Appeal Department.”
By its own actions and words, Humana repeatedly held itself out to the plaintiff as the party tasked with reviewing his claim and ultimately responsible for its denial. Under the facts of this case, we find that the trial court correctly held that Humana conducted itself as an unauthorized insurer transacting the business of insurance in this state, as set forth in La. R.S. 22:1902(5).[6]
J^SERYICE OF PROCESS
Humana contends that the trial court erred when it held that service of process on Humana through the Louisiana Secretary of State was authorized and valid under La. R.S. 22:1907(A).
In pertinent part, La. R.S. 22:1907 provides:
A. The transacting of business in this state by a foreign or alien insurer *905 without a certifícate of authority is equivalent to an appointment by such insurer of the Secretary of State and his successor or successors in office to be its true and lawful attorney, upon whom may be served all lawful process in any action, suit, or proceeding maintained by the commissioner of insurance or arising out of such policy or contract of insurance, and the transacting of business by such insurer is a signification of its agreement that any such service of process is of the same legal force and validity as personal service of process in this state upon it.
Humana contends that it is not an insurance company and not engaged in the business of insurance in Louisiana or any other state. Therefore, it contends that it is properly classified as a foreign corporation—not a foreign or unauthorized insurer—for purposes of service of process. Because it had no designated agent for service of process, Humana insists that it should have been served pursuant to La. C.C.P. Art. 1261 and La. R.S. 13:3204.
Because we have concluded that the trial court correctly held that Humana was acting as an unauthorized insurer transacting business in Louisiana under La R.S. 22:1902, we likewise uphold the trial court’s corresponding finding that service of process on the Secretary of State pursuant to La. R.S. 22:1907 was proper.
TIMELINESS OF MOTION FOR NEW TRIAL
Humana claims that the trial court erred in finding that its motion for new trial was untimely. However, despite its finding of untimeliness, the trial court elected to consider the motion for new trial as an action to annul a [ judgment under La. C.C.P. Art. 2002, which could be brought at any time. The trial court then diligently addressed and ruled upon all of the matters raised by Humana in its motion for new trial, i.e., Humana’s status as an insurer, the propriety of service of process, and the sufficiency of the evidence at the default confirmation. As a result, Hu-mana has failed to demonstrate that it suffered any prejudice as a result of the alleged error. Accordingly, we pretermit consideration of this issue as moot.
SUFFICIENCY OF EVIDENCE AT DEFAULT CONFIRMATION
Humana argues that the plaintiff failed to prove a prima facie case because he failed to introduce the Kanawha policy into evidence at the default confirmation hearing. Upon this basis, Humana seeks to have the default judgment rendered against it reversed.
In support of its position, Humana cites Johnston v. Broussard, 41,477 (La.App. 2 Cir. 9/20/06), 940 So.2d 79; Martin v. Sanders, 35,575 (La.App. 2 Cir. 1/23/02), 805 So.2d 1209; Sudds v. Protective Cas. Ins. Co., 554 So.2d 149 (La. App. 2d Cir. 1989); and Brown v. Trinity Ins. Co., 480 So.2d 919 (La. App. 2d Cir. 1985). Johnston was a legal malpractice case while the three other cases involved auto accidents. In each of these cases, a default judgment was confirmed without the plaintiff admitting into evidence a copy of the insurance policy affording coverage at the time of the tort. In each case, the court held that the written instrument was an essential element of the plaintiffs prima facie case and that no valid default judgment could be rendered without introducing it in evidence. The default judgments were vacated in all of these cases.
|1tiBased upon its unique facts, we distinguish the instant case from this line of jurisprudence. In the cited cases, the absence of the policies prevented a determination of whether any coverage was pro *906 vided for the torts at issue. Here, Humana admitted in all of its correspondence that the plaintiff was covered under the policy at issue. Indeed, the plaintiff was actually receiving monthly payments until Humana chose to terminate his benefits. Further, Humana even quoted the relevant policy provisions in its January 27, 2014 letter and paraphrased them in the November 25, 2013 letter. We find that the factual pattern presented by this case, together with the many and extensive admissions made by Humana in its correspondence, serve to distinguish the instant case from the cited ones.[7]
Our review of the record reveals no abuse of the trial court’s discretion in its holding that the plaintiff established a pri-ma facie case at the confirmation of the default.
ATTORNEY FEES
In his answer to the appeal, the plaintiff sought additional attorney fees for defending against the instant appeal. The general rule is an increase in attorney fees is usually allowed where a party was awarded attorney fees by the trial court and is forced to and successfully defends an appeal. Houston v. Blue Cross Blue Shield of La., 37,097 (La.App. 2 Cir. 4/9/03), 11fi843 So.2d 542, writ denied, 2003-1342 (La. 9/19/03), 853 So.2d 641. Stated another way, an increase in attorney fees for services rendered on appeal is appropriate when the defendant appeals and obtains no relief. Houston v. Blue Cross Blue Shield of La., supra. We find that an award of additional attorney fees of $1,000 is warranted.
CONCLUSION
The trial court judgment is affirmed. Additional attorney fees of $1,000 are awarded to the plaintiff, Michael Swinea.
Costs of this appeal are assessed to the appellant, Humana, Inc.
AFFIRMED; ADDITIONAL ATTORNEY FEES AWARDED.

. The record established that Kanawha was a subsidiary of KMG America, which was acquired by Humana in 2007.

. The only variance in the address was the zip code. In the first letter, it was ‘‘29721-3000” and ‘‘29720” in the two subsequent letters.

. Humana did not complain about the amount of attorney fees below or on appeal.

. It states:
Every foreign or alien insurer shall appoint the Secretary of State to be its true and lawful attorney in this state upon whom, or some other person in his office during his absence he may designate, all lawful process in any action or proceeding against such insurer may be served, which shall constitute service on such insurer, Such appointment shall continue in force so long as any contract or other liability of such insurer in this state shall remain outstanding. Whenever such process shall be served upon the Secretary of State, he shall forthwith forward a copy of the process by registered or certified mail or by commercial courier as defined in R.S. 13:3204(D), when the person to be served is located outside of this state to the person designated for the purpose by the insurer.

. The trial court made the following observation about finding that Humana’s actions made it a de facto foreign insurer doing business in this state and rendered the service made valid:
To hold otherwise in this case would be to allow Humana, Inc. to transact the business of insurance in this State, independently and in concert with its wholly owned subsidiary, to take all actions of an insurer, and to reap all benefits of an insurer, without accepting the conditions placed upon such activity by our law. Sanctioning this result would be a circumvention of the public policies embodied in our Insurance Code and related statutes regulating such activities for the welfare of the general public.

. Based upon Humana’s blatant and independent actions, we easily distinguish this case from Keaty v. RPM Int'l, Inc., 51,019 (La.App. 2 Cir. 10/21/16), 208 So.3d 507, 2016 WL 6134912, wherein this court found insufficient evidence to support a default judgment against a parent company for the acts of its subsidiary.

. In Brown, there was a letter from the insurer asking for a wage loss verification and another referring to a settlement draft; in Sudds, there was a letter discussing a settlement offer; in Martin, there was a police report reciting that the defendant driver had an expired policy; and in Johnston, there were letters and a claims-made policy that did not cover the period when the claim was made which, taken together, tended to show that there was no coverage. Factually, none of these cases comes even remotely close to the admissions contained in the letters in the instant case.
Furthermore, because the insurer itself quoted the specific provisions of the policy which it felt were dispositive in rejecting the claim in its correspondence to the plaintiff, we distinguish the instant case from Arias v. Stolthaven New Orleans, L.L.C., 2008-1111 (La. 5/5/09), 9 So.3d 815, In that case, the supreme court vacated a default confirmation when the only documents admitted into evidence to show the insurance coverage failed to provide any information on the terms and conditions of the policy.